UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES E. SPIVEY, III,

       Plaintiff,                              Case No. 12-CV-10207

vs.                                              HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY

       Defendant.
_____/

**OPINION AND ORDER (1) REJECTING IN PART THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE DATED DECEMBER 19, 2012 (DKT. 15), (2) OVERRULING IN PART AND SUSTAINING IN PART PLAINTIFF'S OBJECTIONS (DKT. 18), (3) GRANTING PLAINTIFF'S MOTION FOR REMAND (DKT. 11), (4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 13), AND (5) REMANDING THE CASE**

**I. INTRODUCTION**

      This is a social security case. Plaintiff Charles E. Spivey, III, appeals from the final determination of the Commissioner of Social Security that he is not disabled and therefore not entitled to disability insurance benefits. The matter was referred to Magistrate Judge Charles E. Binder for all pretrial proceedings. The parties have filed cross motions for summary judgment. Magistrate Judge Binder issued a report and recommendation (R&R, Dkt. 15), recommending that the Commissioner's motion be granted and that Plaintiff's motion be denied. Plaintiff has filed objections to the R&R. Pl.'s Objections (Dkt. 18). The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). For the reasons that follow, the Court will reject the R&R in part, overrule Plaintiff's first, second, and third objections, sustain Plaintiff's fourth objection, deny the

Commissioner's motion for summary judgment, and remand the case for further consideration pursuant to sentence four of 42 U .S.C. § 405(g).

The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated here. Administrative Law Judge Jacqueline Y. Hall-Keith (ALJ) denied Plaintiff's claim for disability insurance benefits on finding that Plaintiff (i) was not impaired; (ii) had the residual functional capacity to perform a limited range of sedentary work; (iii) retained the ability to perform his past relevant work as a gate guard; and (iv) has not been disabled since February 17, 2010, the date of his application for disability benefits. After reviewing the record and the cross motions for summary judgment, the Magistrate Judge determined that substantial evidence supported the ALJ's conclusion that Plaintiff is not disabled.

In finding that Plaintiff was capable of his past relevant work, the ALJ determined that Plaintiff was capable of unskilled sedentary jobs, such as a gate guard, ticket taker/lobby attendant, sorter and assembler by relying on the testimony of a vocational expert (VE). After thorough review of the entire record, the Court rejects this conclusion, finding that the ALJ failed adhere to Social Security Ruling 00-4p (SSR 00-4p) and made a ruling not based on substantial evidence.

## II. ANALYSIS

Plaintiff advances four objections in support of his position that the decision of the ALJ is not supported by substantial evidence. The Court addresses each of Plaintiff's objections, in turn.

**A. First Objection**

Plaintiff's first objection argues that the ALJ failed to fulfill her heightened duty to develop a full and fair record. Pl.'s Objections at 1-3. Plaintiff contends that under Lashley v. Secretary of Health and Human Serv., 708 F.2d 1048 (6th Cir. 1983), the ALJ did not discharge her heightened duty to develop fully the record because Plaintiff has a "learning disorder and/or mild retardation" and at the hearing he appeared without representation. Pl.'s Objections at 2. According to Plaintiff, the ALJ only questioned him superficially, leading to improper inferences regarding Plaintiff's limitations, including depression and past work. Id. Plaintiff argues that the "Magistrate Judge did not consider the combined effect of Plaintiff's arguments with regard to the ALJ's failure to fully and fairly develop the record." Id. at 3. The Magistrate Judge found that the ALJ's heightened duty was not triggered and that, even if it was, Plaintiff has not pointed to any specific facts that the ALJ failed to consider. R&R at 16-18.

Upon de novo review of the record, the Court agrees with the Magistrate Judge's recommendation and overrules Plaintiff's objection. The Court finds that the ALJ properly discharged her heightened duty to develop the record. The Sixth Circuit has explained that the remedial nature of the Social Security statute and the duty of the ALJ to develop the record imposed a "special duty" on the ALJ where the claimant appears without counsel, is unfamiliar with hearing procedures, and cannot put on an effective case. Rise v. Apfel, No. 99-6164, 2000 WL 1562846, at *2 (6th Cir. 2000) (citing Lashley, 708 F.2d at 1051-1052). The ALJ discharges this special duty by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Lashley, 708 F.2d at 1052. There is no bright-line test for determining whether the ALJ has failed to fully develop the record; that determination is made on a case-by-case basis. Id.

Under this standard, the Sixth Circuit has found that an ALJ's determination was deficient when the record appears incomplete or undeveloped. For example, in Lashley, the court noted that the hearing lasted only 25 minutes, the hearing transcript was only 11 pages long, and the plaintiff "possessed limited intelligence, was inarticulate, and appeared to be easily confused." Id. Moreover, the ALJ only asked superficial questions regarding the plaintiff's limitations and work history, which enabled the ALJ to draw improper inferences about the plaintiff: the plaintiff answered the ALJ's questions about his ability to mow a lawn, but the court stated that "how often the activity is attempted, how long he is capable of sustaining the activity, and what adverse consequences he suffers as a result of the activity would undoubtedly have provided more probative information concerning his physical limitations." Id. As regards work history, the court wondered why the ALJ did not ask why the plaintiff had remained at his previous job for only three days. Id. at 1053.

In contrast to the ALJ's treatment of the plaintiff in Lashley, the Sixth Circuit held that the ALJ in Kelly v. Apfel, 166 F.3d 1214 (Table) (6th Cir. 1998), adequately discharged his duty to develop the record fully. The plaintiff had appeared before the ALJ without counsel and voluntarily elected to proceed without counsel. Id. at *4. The ALJ also allowed Plaintiff's wife to testify at the hearing and questioned her. Id. The ALJ also accepted medical evidence regarding the plaintiff's disability, though did not accept his testimony regarding when his disability began. Id. The Sixth Circuit explicitly distinguished Kelly from Lashley in light of the ALJ's questioning and found that the ALJ had discharged his duty to develop the record fully. Id.

In the instant case, the Court agrees with the Magistrate Judge that the ALJ did not fail to develop the record. Here, Plaintiff was unrepresented at the hearing and was not familiar with

hearing procedures. However, Plaintiff was not prevented from presenting an effective case and has not pointed to any specific facts that the ALJ failed to consider. Plaintiff submitted medical records prior to the hearing, which the ALJ accepted into the record. Plaintiff also signed a waiver for right to representation, which the ALJ discussed on the record with Plaintiff, like the plaintiff in Kelly. Administrative Record (A.R.) 29. Further, like the plaintiff in Kelly who brought a family member (his wife) to testify at his hearing, Plaintiff in the instant case brought his mother to the hearing to testify. A.R. 51-60; 62-63.

Even if the special duty arose, the ALJ developed the record fully, appropriately questioning Plaintiff on his limitations and work history. Although Plaintiff indicated that he was in special education and completed his formal education only through the eleventh grade, Plaintiff's answers to the ALJ's questions, as reflected in the hearing transcript, do not indicate that Plaintiff possessed limited intelligence, was inarticulate, or appeared to be easily confused. See Lashley, 708 F.2d at 1052 (stating plaintiff was "a far cry" from an articulate plaintiff).

The ALJ also did not draw any improper inferences regarding Plaintiff's limitations or work history. Unlike the ALJ in Lashley, the ALJ in this case thoroughly reviewed Plaintiff's education history and discussed his daily routine. A.R. 34-37. The ALJ also inquired about Plaintiff's past medications and medical treatment and asked Plaintiff whether the gunshot wound to his abdomen was his sole impairment, to which Plaintiff answered "Yes." A.R. 52. The ALJ found that Plaintiff's prior work as a gate guard constituted substantial gainful activity, A.R. 60, and Plaintiff does not cite any authority for the proposition that the ALJ improperly assessed Plaintiff's testimony about his own prior employment. Therefore, an improper inference was not drawn from Plaintiff's own testimony regarding his prior work history. Further, unlike the ALJ in Lashley who did not inquire why the plaintiff in that case had left his

job after three days, the ALJ in the instant case developed a record in which the reason for Plaintiff leaving his employment was disclosed. Id. Lastly, prior to the hearing, Plaintiff had submitted medical records, which the ALJ referred to during the hearing in exploring Plaintiff's limitations. A.R. 31. The ALJ also left the record open for two more weeks after the hearing so that Plaintiff could submit more documentation. A.R. 64.

Accordingly, the Court finds that the ALJ fully developed the record and Plaintiff's first objection is overruled.

**B. Second Objection**

In his second objection, Plaintiff argues that the ALJ incorrectly conducted her step three analysis by finding that Plaintiff's IQ scores were invalid. Plaintiff further argues that the ALJ should have inquired regarding Plaintiff's deficits in adaptive functioning. Pl.'s Objections at 3-6 (Dkt. 18). Plaintiff states that he has a valid score of 64 from 2004. Id. at 4. Plaintiff argues that under Securities & Exchange Comm'n v. Chenery Corp., 332 U.S. 194 (1947), the Magistrate Judge engaged in "post-hoc rationalization" by weighing the evidence in the record – a duty delegated to the ALJ. Id. at 4. Plaintiff argues that the ALJ's failure to analyze Plaintiff's mental limitations under the criteria of Listing 12.05C did not provide sufficient information for the Court to perform adequate judicial review. Id. at 5.

After de novo review of the record, the Court agrees with the Magistrate Judge's recommendation and overrules Plaintiff's objection. Plaintiff's objection centers on the ALJ's treatment of the evidence in light of the mental retardation regulations. The regulations, in pertinent part, state:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, <u>or</u> D are satisfied.
>
> \*\*\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> > 1. Marked restriction of activities of daily living; or
> > 2. Marked difficulties in maintaining social functioning; or
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> > 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. <u>See also</u> <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001) (explaining disability criteria of § 12.05C); <u>Turner v. Comm'r of Soc. Sec.</u>, 381 F. App'x 488, 491 (6th Cir. 2010). In order to meet the criteria of Listing 12.05C, a claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment. <u>Foster v. Haller</u>, 279 F.3d 348, 354 (6th Cir. 2001). Courts have further explained that "adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." <u>West v. Comm'r of Soc. Sec.</u>, 240 F. App'x 692, 698 (6th Cir. 2007).

As for IQ scores, an ALJ may choose to disregard IQ scores that would normally lead to a finding of disability when those scores were undermined by a doctor's full evaluation. <u>Dragon v. Comm'r of Soc. Sec.</u>, 470 F. App'x 454, 462 (6th Cir. 2012). In doing so, the ALJ may question results from "both medical and nonmedical sources" that detail "the individual's activities of daily living; social functioning; concentration, persistence and pace; or ability to tolerate increased medical demands." <u>Id.</u> at 462-463. See <u>Daniels v. Comm'r of Soc. Sec.</u>, 70 F. App'x 868, 872 (6th Cir. 2003) (finding that substantial evidence supported the ALJ's finding that claimant was not mentally retarded, although claimant had a performance IQ of 67, because

7

the examining doctor also found claimant to be within the borderline range of intelligence and clinically appeared to function in the dull-normal range of intelligence).

Turning to the instant case, the Court concludes that the ALJ based her decision on substantial evidence from Plaintiff's testimony at the hearing and medical records that Plaintiff did not qualify under Listing 12.05C. The ALJ relied upon a 2010 "Psychiatric Review Technique," where George Starrett, Ed.D., questioned Plaintiff's credibility due to his lack of effort in the IQ testing. A.R. 415. Plaintiff had recently obtained a full-scale score of 50, and Starrett noted that Plaintiff had higher scores in the past, such as the full-scale score of 64 cited by Plaintiff.[1] A.R. 415. Starrett also noted that Plaintiff was suspected of faking illness in the past and concluded that Plaintiff's "IQ scores are likely not valid, given his limited effort during the testing session." Id. Therefore, substantial evidence supported the ALJ's decision to find Plaintiff's most recent score of 50 to be invalid and to suspect that his previous score of 64 was also invalid.

The ALJ also concluded Plaintiff was capable of simple, repetitive tasks and did not have a mental impairment imposing an additional and significant work-related limitation of function. A.R. 15. The ALJ reasoned that Plaintiff "engages in various activities, lives alone, and has been able to perform unskilled work in the past." Id. The ALJ also noted that, based on the Psychiatric Review Technique, Plaintiff did not have any marked restrictions in daily living or marked difficulties in social functioning or maintaining concentration, persistence, or pace, or

---

[1] The Psychiatric Review Technique incorporates a 2010 "Psychological Report," which includes the results from a 2010 IQ test with a full scale score of 50. A.R. 402. In reviewing this IQ score, the report indicates that the "Examiner believes that claimant was not being cooperative with testing." Id. The report further indicates a full-scale IQ score of 64 in 2004 and a full-scale IQ score of 70 in 1998. The report states that Plaintiff has a "history of a learning disability," trouble following directions, and poor concentration. Id. The report also states that Plaintiff's "records from prison indicate that he denied hearing voices and displayed no evidence of a thought disorder. He may be faking an illness. He wants to say he has bipolar disorder." Id.

any episodes of decompensation. Id. Accordingly, the ALJ relied upon substantial evidence in her analysis of Plaintiff's impairment for mental retardation under Listing 12.05C, which afforded the Court adequate judicial review and the objection is overruled. See Justice v. Comm'r of Soc. Sec., 12–3150, 2013 WL 645957, at *4 (6th Cir. Feb. 22, 2013) (holding that substantial evidence supported ALJ's determination that the plaintiff did not exhibit a deficit in adaptive functioning to qualify for mental retardation under Listing 12.05C).

### C. Third Objection

In his third objection, Plaintiff argues that the ALJ erred in making her residual functional capacity (RFC) determination and forming her hypothetical question for the vocational expert. Pl.'s Objections at 6-7. Consequently, Plaintiff contends, the opinion provided by the VE cannot be considered substantial evidence. Id. at 7. Upon de novo review of the record, the Court agrees with the Magistrate Judge's recommendation and overrules Plaintiff's objection.

As outlined in the Social Security regulations, in between step three and step four of the sequential evaluation process, the ALJ must first consider Plaintiff's RFC. 20 C.F.R. § 416.920(e). RFC "is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments." Poe v. Comm'r of Soc. Sec., 342 F. App'x 149, 155 (6th Cir. 2009). In determining RFC, the ALJ must assess all of a plaintiff's impairments, not just those that are severe. 20 C.F.R. §§ 416.920(e); 416.945.

For mental impairments, courts have held that an ALJ does not need to specifically reference a particular mental impairment, such as difficulties maintaining concentration, persistence, and pace, in the RFC, if the RFC contains a task limitation, which accounts for the mental impairment. For example, in Berkowski v. Commissioner of Social Security, 652 F. Supp. 2d 846 (E.D. Mich. 2009), the court addressed an objection by the plaintiff that the ALJ's

RFC and hypothetical question to the VE did not adequately address the plaintiff's mental limitations. The court explained that the ALJ had properly evaluated the plaintiff's mental impairments and concluded that the plaintiff had "moderate difficulties in maintaining concentration, persistence or pace." Id. at 860. The court stated that the "ALJ in his RFC limited Plaintiff to performing 'simple, unskilled work with one, two or three step instructions.'" Id. In overruling the plaintiff's objection, the court explained that the ALJ did not make a factual finding that the plaintiff's mental limitations would result in difficulty at work in instances "not addressed by the limitations set forth in the ALJ's RFC." The court stated that the plaintiff's objection did not refer "to any specific work-related mental limitation or evidence of the same which the ALJ failed to consider, failed to include in the RFC or requires a more restrictive limitation than that set forth in the RFC." Id. Furthermore, the ALJ's RFC limiting the plaintiff to "unskilled work of up to three step instructions provides more detail than a mere reference to 'simple' work." Id. The Court then found that the RFC limitation to simple, unskilled work with one, two, or three step instructions" was supported by substantial evidence. Id. See also Morgan v. Comm'r of Soc. Sec., No. 12–12021, 2012 WL 6553284, at *11 (E.D. Mich. Nov. 28, 2012) (holding that the ALJ appropriately accounted for deficiencies in concentration, persistence, and pace in the RFC finding by limiting the claimant to work in a "'low stress environment' (defined as 'only minimal changes in work tasks or work environment') and 'simple, routine, repetitive work tasks.'").

After formulating the RFC, the ALJ may ask a VE to testify in response to a hypothetical question, which can serve as substantial evidence to support a conclusion that a claimant can perform other work. Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 516 (6th Cir. 2010). However, "the question must accurately portray a claimant's physical and mental impairments." Id.

In her decision, the ALJ assigned Plaintiff an RFC that limited him to "sedentary work as defined in 20 C.F.R. § 416.967(a), except that he is limited to unskilled work involving only 1-2-3 step tasks."[2] In the hypothetical question the ALJ posed to the VE, the ALJ stated the following:

> I want you to assume the claimant is a younger individual, less than a high school education, but no difficulties with communication; the similar residual functional capacity to perform unskilled work, simple instructions or directions; can follow simple directions, presumably one/two/three-step type activities. And, based on this gunshot wound to his abdomen, we'll put him at sedentary.

A.R. 62. The VE responded that the hypothetical person could person the job of a gate guard, Plaintiff's past work, and that other jobs were available in the national economy, such as sorter, bench assembler, surveillance system monitor, ticket taker, and lobby attendant. Id.

Plaintiff objects that the foregoing RFC did not account for Plaintiff's moderate impairments for concentration, persistence, and pace difficulties as documented in his medical records. Pl.'s Objections at 7. Plaintiff contends that the ALJ did not consider evidence indicating that Plaintiff has concentration limitations, and cites the Psychiatric Review Technique that Plaintiff "'has trouble following directions' and has 'poor' attention and concentration." Id. (citing A.R. 402). Plaintiff also cites the report to demonstrate that Plaintiff

---

[2] The regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

has "'moderate' limitation in 'the ability to maintain attention and concentration for extended periods.'" Id. (citing A.R. 418).

However, the record indicates that the ALJ accounted for Plaintiff's mental limitations in making her RFC determination. The ALJ properly concluded that the record did not indicate that Plaintiff had any marked limitations in any areas of functioning and cites the same report as Plaintiff. A.R. 18, 417-418. The ALJ also found that the Plaintiff's school records showed that he was involved in special education, A.R. 18; 155-209, and that Plaintiff's medical records from Mound Correctional Facility documented "mild mental retardation and/or a learning disability," but with "the ability to interpret and follow directions related to employment" and fair comprehension and judgment. A.R. 18; 310; 380-381. At the hearing, the ALJ asked Plaintiff "How's your concentration?" Plaintiff responded "It's okay." A.R. 18, 42. Lastly, the ALJ noted that Plaintiff's Global Assessment of Functioning score of 45-50 was incompatible with other evidence in the record, such as Plaintiff's past work history, ability to live alone, and care for his own needs. Id.

Like the ALJ in Berkowski who accounted for the plaintiff's moderate limitations in concentration, persistence, and pace in the RFC by limiting the plaintiff to "unskilled work of up to three step instructions," the ALJ in the instant case accounted for Plaintiff's mental limitations in her RFC by limiting him to "unskilled work involving only 1-2-3 step tasks." Id. Plaintiff's objection also does not refer "to any specific work-related mental limitation" that the ALJ failed to consider or include in the RFC "or requires a more restrictive limitation than that set forth in the RFC." Berkowski, 652 F. Supp. 2d at 860. As recounted above, the ALJ's RFC limitation was supported by substantial evidence and the ALJ properly included Plaintiff's mental

impairments in her hypothetical question to the VE via the RFC limitations. Consequently, the ALJ could also rely upon the testimony provided by the VE to the hypothetical question.

Accordingly, the Court overrules Plaintiff's third objection.

### D. Fourth Objection

In his fourth objection, Plaintiff argues that the ALJ failed to meet the requirement of SSR 00-4p in relying on the testimony of the VE. Pl.'s Objections at 8 (Dkt. 18). Plaintiff argues that under SSR 00-4p, if the VE's testimony conflicts with the Dictionary of Occupancy Titles (DOT), the ALJ is required to resolve the conflict by (i) eliciting from the VE an explanation for the conflict and (ii) explaining how she resolved the conflict in her decision. Plaintiff asserts that the ALJ failed to resolve this conflict in her decision. After de novo review of the record, the Court agrees with Plaintiff and sustains his objection.

In making the Step 4 determination whether a claimant is capable of performing his past relevant work, an ALJ may solicit VE testimony, but is not required to do so. Wright-Hines v. Comm'r of Soc. Sec., 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We may use the service of vocational experts . . . to help us determine whether you can do your past relevant work")). If an ALJ does solicit testimony from a VE, the framework outlined by SSR 00-4p governs the ALJ's inquiry. Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 606 (6th Cir. 2009).

SSR 00-4p is a Social Security Administration "Policy Interpretation Ruling," addressing the "Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions." SSR 00-4p, 2000 WL 1898704 (Dec. 4. 2000). SSR 00-4p provides requirements that ALJs must follow when using a VE at a hearing:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When

> there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.
>
> ***
>
> Reasonable explanations for such conflicts, which may provide a basis for relying on the evidence from the VE . . . , rather than the DOT information, include . . . a VE's . . . experience in job placement or career counseling.
>
> ***
>
> ### The Responsibility To Ask About Conflicts
>
> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT.
>
> ***
>
> ### Explaining the Resolution
>
> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, *2-*4. See also Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374 (6th Cir. 2006) ("When there is a conflict, the ALJ must resolve the conflict by determining if the explanation given by the expert is reasonable and provides a basis for agreeing with the expert rather than the DOT information."); Lindsley, 560 F.3d at 606 (6th Cir. 2009) (explaining that SSR 00-4p "imposes an affirmative duty on ALJs to ask VEs if the evidence that they have provided 'conflicts with the information provided in the DOT.'") (quoting SSR 00-4p).

14

In the instant case, the ALJ was not required to, but decided to, solicit testimony from the VE regarding the VE's opinion that Plaintiff's prior work consisted of a gate guard. A.R. 16. The VE testified that the DOT listed the gate guard as light work, but that she considered it to be sedentary work from her experience. A.R. 17. As the SSR 00-4p explicitly provides that a VE may draw upon personal experience, the VE provided a reasonable explanation for the ALJ. But Plaintiff correctly notes that the ALJ did not resolve the conflict in her decision, as required by SSR 00-4p. A.R. 17. The ALJ noted the discrepancy, but inexplicably failed to resolve the issue in her decision. Without an adequate explanation crediting the VE's testimony over the DOT, the ALJ decided that Plaintiff could perform his past relevant work, which may or may not be at the level the ALJ determined Plaintiff was capable of performing under his RFC.

The ALJ also elicited testimony from the VE regarding other jobs, but likewise did not abide by SSR 00-4p. The VE testified that ticket taker/lobby attendant jobs were classified by the DOT as light, but from the VE's experience, the jobs were performed at the sedentary level. Although this conflict was raised by the VE during the course of her testimony, the ALJ also failed to resolve the conflict in her decision. Moreover, the Court's review of the record indicates that the ALJ elicited further testimony from the VE regarding jobs of sorter, assembler, and surveillance monitor. A.R. 62. The VE testified that these jobs were done at the sedentary level. Id. Yet, the hearing transcript indicates that ALJ did not ask if these jobs conflicted with the information provided in the DOT, as required by SSR 00-4p. A.R. 62. Therefore, the ALJ did not base her alternative findings on substantial evidence.

### III. CONCLUSION

Accordingly, the Court overrules Plaintiff's first, second, and third objections, but sustains his fourth objection and remands the case pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this order and opinion.

SO ORDERED.

Dated: March 21, 2013  s/Mark A. Goldsmith
   Flint, Michigan  MARK A. GOLDSMITH
  United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2013.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager